UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants

Juan Gonzalez  Robert Rosenthal
Edna Palencia

Attorneys Present for Interested Party
  Nicole Daro

**Proceedings:**   MOTION RE: PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(J) OF THE NATIONAL LABOR RELATIONS ACT (Docket #2, May 22, 2013)

## I.   INTRODUCTION

Petitioner Mori Pam Rubin, the Director of Region 31 of the National Labor Relations Board (hereafter "the Regional Director" and "the NLRB," respectively), initiated this action on May 22, 2013.  The Regional Director seeks a temporary injunction restraining the Hospital of Barstow ("Barstow") from engaging in unfair labor practices related to its negotiations with the California Nurses Association ("CNA").  CNA has initiated proceedings against Barstow before the NLRB regarding the same allegedly unfair labor practices, and the Regional Director has brought this action to obtain interim relief pending the resolution of those proceedings.

The NLRB filed its application for a temporary injunction on May 22, 2013. Barstow did not file a timely opposition to the petition, and the Court granted a temporary restraining order in the Regional Director's favor on June 24, 2013.  Barstow filed an opposition on July 1, 2013, and the NLRB filed a reply on July 8, 2013.  The Court now considers whether to convert its temporary restraining order into a preliminary injunction.

After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

## II.   BACKGROUND

Respondent Barstow operates a hospital in Barstow, California, and employs roughly seventy-five registered nurses ("RNs"). CNA is labor organization, and on June 29, 2012, the NLRB certified CNA as the exclusive representative of the Barstow RNs for purposes of collective bargaining.

Prior to CNA's certification, representatives from CNA and Barstow met to discuss an agreement governing labor organizing by the CNA and the negotiation of a collective bargaining agreement. These representatives discussed certain principles and guidelines related to these topics, and purportedly reached a general agreement ("the Proposed Labor Agreement"). The Proposed Labor Agreement was reduced to writing, but never executed in writing. Barstow claims, however, that CNA representatives orally agreed to the Proposed Labor Agreement and that the parties behaved as if it were governing their conduct. The purported oral execution of the Proposed Labor Agreement occurred in April 2012.

Negotiations over the terms of a collective bargaining agreement between CNA and Barstow commenced in July 2012. During these negotiations, Barstow's chief representative refused to discuss or present any proposals on behalf of Barstow before receiving all of CNA's economic and non-economic proposals. This position was repeated during several bargaining sessions. Additionally, Barstow's chief representative abruptly left or cancelled bargaining sessions before reaching an impasse on any specific issues, and on one occasion, failed to attend a session or send a replacement Barstow representative with authority to negotiate.

While these negotiations were ongoing, on September 2, 2012, Barstow announced a new policy regarding employee certification for advanced cardiac life support training. This policy required several of Barstow's RNs to obtain new training, and reduced the amount of compensation previously provided by Barstow for completing this sort of training. Barstow implemented these changes without bargaining with CNA or even notifying CNA.

Negotiations moved slightly forward in October 2012, when Barstow began providing CNA with proposals and counter-proposals during collective bargaining sessions. On December 28, 2012, however, negotiations ceased due to a disagreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

regarding Assignment Despite Objection forms ("ADO forms"). ADO forms are used by RNs at Barstow to document their objections to particular assignments when they believe the assignment could compromise patient care or the RN's license. During negotiations on December 28, 2012, Barstow's chief representative stated that he would no longer bargain with CNA unless the RNs stopped using ADO forms. Barstow's representative refused to bargain over the issue, and ended the negotiations minutes after they began. On January 11, 2013, CNA and Barstow participated in a mediation, but shortly after the session began, Barstow's representative broke off negotiations, asserting that he refused to bargain as long as the ADO forms were being used. No negotiations have taken place since the January 11, 2013 meditation, and Barstow has refused to schedule future bargaining dates.

Based on these events, CNA initiated unfair labor practice proceedings before the NLRB. A hearing in the matter took place before Administrate Law Judge Jay Pollack on June 18 – 20, 2013, and on June 27, 2013. The hearing and evidentiary record is now closed, but no decision has been issued.

### III.   LEGAL STANDARD

Section 10(j) of the National Labor Relations Act ("NLRA"), under which the Regional Director is proceeding in this case, grants the NLRB authority to seek temporary relief from a district court pending its resolution of an unfair labor practice charge. 29 U.S.C. § 160(j); McDermott v. Ampersand Pub., LLC, 593 F.3d 950, 957 (9th Cir. 2010). "The district court is given authorization to grant such temporary relief or restraining order as it deems just and proper, keeping in mind that the underlying purpose of Section 10(j) is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge." McDermott, 593 F.3d at 957 (internal citations and quotation marks omitted).

To determine whether an injunction pursuant to Section 10(j) should issue, a district court considers the traditional criteria governing the issuance of an injunction. Frankl v. HTH Corp., 650 F.3d 1334, 1355 (9th Cir. 2011). "Thus, when a Regional Director seeks § 10(j) relief, he must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

Regarding the likelihood of success on the merits, a district court considers "the probability that the [NLRB] will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that [a Circuit Court of Appeals] would grant a petition enforcing that order, if such enforcement were sought." Id. The Ninth Circuit has explained that a Regional Director initiating a Section 10(j) proceeding may satisfy this requirement "by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory." Id. Additionally, "irreparable injury is established if a likely unfair labor practice is shown along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief." Id. at 1362. If a likelihood of irreparable harm and success on the merits is established, "the [Regional Director] will have established that preliminary relief is in the public interest," and there is considerable support for a finding that the equities weigh in favor of an injunction. Id. at 1365.

## IV. ANALYSIS

### A. Likelihood of Success on the Merits

The Regional Director argues that by engaging in the conduct described above, Barstow has engaged in unfair labor practices under Sections 8(a)(1) and 8(a)(5) of the NLRA. 29 U.S.C. §§ 158(a)(1), (5). In particular, the Regional Director contends that the following were unfair labor practices: (1) Barstow's refusal and delay in exchanging and propounding proposals, (2) Barstow's implementation of a new training policy without bargaining with CNA, (3) Barstow's refusal to continue negotiations until its RNs agree to stop using ADO forms, and (4) Barstow's failure—in the totality of the circumstances—to negotiate in good faith.

The Court finds that this conduct amounts to an unfair labor practice. First, as Barstow does not contest, it has refused to bargain with CNA in good faith. Several facts weigh in favor of this finding, particularly Barstow's refusals and delay in exchanging proposals, and Barstow's abrupt cancellation or failure to appear for bargaining sessions. See Byrant & Stratton Business Institute, 321 NLRB 1007, 1042 (1996), enforced 140 F.3d 169 (2d Cir. 1998); Camelot Terrace, 357 NLRB No. 161, 2011 WL 7121892, at *10 (Dec. 30, 2011). Additionally, in a recent case involving materially identical facts—including the same charging union and the same chief negotiator acting on behalf of an employer—Administrative Law Judge Eleanor Laws concluded that similar conduct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

amounted to an unfair labor practice. Fallbrook Hospital Corporation d/b/a Fallbrook, JD (SF)-21-13, Case 21-CA-090211 (NLRB Div. of Judges). This decision weighs in favor of finding that the Regional Director will achieve similar success against Barstow. Nelson v. Western Plant Services, Inc. 1996 WL 438778 (W.D. Wash. 1996).

Second, as Barstow again does not contest, it was an unfair labor practice for Barstow to announce a new training policy without first bargaining with CNA. It is well-established that an employer violates Section 8(a)(5) if it unilaterally alters the terms or conditions of employment without bargaining to an impasse. Litton Financial Printing Div. v. NLRB, 501 U.S. 190, 198 (1991); NLRB v. Auto Fast Freight, Inc., 793 F.2d 1126, 1129 (9th Cir. 1986). Consequently, decisions of the NLRB have concluded that changes in job requirements and qualifications are mandatory subjects of bargaining, as are changes in employer policy that affect incidental benefits conferred on employees. In fact, benefits as apparently trivial as free coffee or boxes of laundry detergent have been found to be mandatory subjects of bargaining. In Re Pac. Micronesia Corp., 337 NLRB 469, 480 (2002); Beverly Enterprises, 310 NLRB 222 (1993). The changes instituted by Barstow regarding certification and compensation for mandatory training had a straightforward impact on compensation and the terms of employment, and were therefore mandatory subjects of bargaining. Consequently, Barstow's failure to bargain prior to implementing these changes was an unfair labor practice.

Third, Barstow's refusal to negotiate with CNA until the RNs ceased using the ADO forms is an unfair labor practice. While Barstow argues that it has a legitimate and important interest in preventing RNs from using ADO forms, this interest does not permit Barstow to abandon labor negotiations until CNA accedes to its demands. Barstow may not condition its participation in the collective bargaining process upon CNA's acquiescence to its demands regarding permissive subjects of bargaining, such as the use of ADO forms. NLRB v. Borg-Warner Corp., 356 U.S. 342, 349 (1958); Smurfit-Stone Container Enterprises, 357 NLRB No. 144 (Dec. 22, 2011) (" It is a violation of Section 8(a)(5) for an employer to insist on a union's consent to a nonmandatory proposal as a condition of reaching agreement on mandatory bargaining subjects.").

Accordingly, the Court finds that it is likely that the NLRB will conclude that Barstow has engaged in unfair labor practices. Barstow presents several arguments, which purport to require the Court to conclude that CNA will likely not prevail in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

underlying administrative proceeding even if Barstow conducted violated Sections 8(a)(1) and 8(a)(5). As explained below, none of these arguments are availing.

First, Barstow argues that CNA will not prevail because it agreed to resolve the underlying labor practices dispute through binding arbitration, not through NLRB proceedings. CNA purportedly agreed to binding arbitration when, according to Barstow, it orally executed the Proposed Labor Agreement. In support of this argument, Barstow correctly points out that the Proposed Labor Agreement contains a binding arbitration clause. See Proposed Labor Agreement, Carmody Decl. Ex. A, § 11.

This argument is not persuasive. Crucially, the Proposed Labor Agreement explicitly states that it must be executed in writing:

> Neither party to this Agreement shall be bound to any of its provisions solely by the presence of such provision in any draft herein unless and until this Agreement is signed by such party. No draft of this Agreement prior to that which is signed between the parties shall be used by any party, or be admissible in any proceeding, to interpret the intent of the parties.

Proposed Labor Agreement § 14. Barstow's theory that the Proposed Labor Agreement was orally executed is therefore plainly inconsistent with the agreement's terms. Moreover, Barstow has not put forward any other explanation regarding how the parties could have agreed to resolve their disputes through binding arbitration. Accordingly, the Court cannot find that the NLRB will rule in Barstow's favor due to a binding arbitration clause, because the parties never agreed to any such clause.

At oral argument, counsel for Barstow claimed that Barstow and CNA had submitted other disputes to an arbitrator, and that the only explanation for this conduct is that the parties had reached a general agreement to arbitrate all disputes. This argument has two fatal flaws. First, Barstow fails to provide any evidence regarding the circumstances under which Barstow and CNA submitted disputes to an arbitrator. Consequently, Barstow's showing is plainly insufficient, because the Court is unable to infer that the parties agreed to submit this dispute to an arbitrator from the mere fact that the parties submitted some other disputes to an arbitrator. Second, because Barstow did not submit this evidence to the NLRB in the underlying administrative proceeding, Barstow's evidence is not relevant. As stated above, the Court's inquiry into the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

likelihood of success on the merits focuses on the likelihood that the NLRB will issue an order favorable to CNA. Frankl, 650 F.3d at 1355. Therefore, evidence not submitted to the NLRB is not relevant to the Court's inquiry.[1]

Barstow's second argument contends that CNA is unlikely to succeed because the NLRB lacked a quorum at the time the Regional Director certified CNA as the collective bargaining representative of Barstow's RNs. The NLRB purportedly lacked a quorum because the District of Columbia Circuit, in Noel Canning v. NLRB, 705 F.3d 490 (D.C. Cir. 2013), invalidated the January 2012 recess appointments of three members of the NLRB, leaving the NLRB with only two out of five valid members at the time CNA was certified. Barstow concludes that CNA was never certified to act on behalf of Barstow's RNs, and therefore that it cannot succeed in the proceedings below.

This argument fails, because the Regional Director's authority to exercise powers lawfully delegated to her is not suspended at all times when the NLRB lacks a quorum. Frankl, 650 F.3d at 1354; New Process Steel, L.P. v. NLRB, 130 S.Ct. 2635, 2642 n.4 (2010). Accordingly, even if the NLRB did lack a quorum at the time CNA was certified, this would not affect the Regional Director's exercise of delegated authority to certify CNA as the representative of Barstow's RNs. Magnesium Casting Co. v. NLRB, 401 U.S. 137, 142 (1971) (the NLRB may lawfully delegate authority to certify collective bargaining representatives). Consequently, Barstow has not set out grounds undermining the Regional Director's certification of CNA.[2]

---

[1] The Court notes Barstow's argument, based on out of circuit authority, that the Court has discretion to consider evidence not submitted to the NLRB to determine likelihood of success on the merits. See Muffey ex rel. NLRB v. Spartan Mining Co., 570 F.3d 534 (4th Cir. 2009); NLRB v. Hartman and Tyner, Inc., 714 F.3d 1244 (11th Cir. 2013); Gottfried v. Frankel, 818 F.2d 485 (6th Cir. 1987). Even if the Court had discretion to consider such evidence—which it appears to lack because evidence not submitted to the NLRB is not relevant to the Court's determination—the Court would decline to exercise it here.

[2] Barstow also argues that the Regional Director lacks authority to petition this Court for injunctive relief under Section 10(j) because the NLRB lacks a quorum. This argument has been squarely rejected by the Ninth Circuit, for the reasons explained above. Frankl, 650 F.3d at 1354.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

Barstow's final argument asserts that CNA has recently become affiliated with the National Union of Healthcare Workers, and that as a consequence of this affiliation, there has been a discontinuity of representation that relieves Barstow of its duty to bargain with CNA in good faith. The doctrine of discontinuity of representation underlying this argument pertains to cases where, often due to a merger, there have been such drastic organizational changes in a labor union that the entity emerging after the changes lacks "substantial continuity" with the former entity. See, e.g., Raymond F. Kravis Center for the Performing Arts, Inc. v. NLRB, 550 F.3d 1183, 1190. Where such a discontinuity in the union's identity comes about, the employer no longer has a duty to bargain with the union. CPS Chemical Co., 324 NLRB 1018, 1020 (1997). When determining whether a discontinuity in representation exists, the totality of the circumstances are relevant, including the following factors:

> [C]ontinued leadership responsibilities by the existing union officials; the perpetuation of membership rights and duties, such as eligibility for membership, qualification to hold office, oversight of executive council activity, the dues/fees structure, authority to change provisions in the governing documents, the frequency of membership meetings, the continuation of the manner in which contract negotiations, administration, and grievance processing are effectuated; and the preservation of the certified union's physical facilities, books, and assets.

Western Commercial Transport, 288 NLRB 214, 217 (1988).

Here, Barstow contends that a discontinuity exists because "the extent to which the CNA has taken responsibility for all of [the National Union of Healthcare Workers'] debts could seriously interfere with the CNA's obligations regarding service and benefits to its registered nurse units." Def. Opp. at 21. Barstow provides no explanation why new financial obligations would cause a discontinuity of representation, nor does it explain why these financial obligations would change CNA leadership or its practices. Consequently, the Court rejects the argument that a discontinuity of representation justifies Barstow's failure to bargain with CNA.

Accordingly, the Court finds that CNA is likely to succeed in the underlying administrative proceedings, and therefore concludes that the first criterion for issuing an injunction is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

### B.     Irreparable Harm

The Regional Director contends that interim injunctive relief is necessary to prevent irreparable harm in the form of decreased support for the CNA, disruption of the collective bargaining process, and interference with the NLRB's ability to grant an appropriate remedy.  The Court agrees.  The Ninth Circuit has explained that failure to bargain in good faith likely causes sufficient irreparable harm to justify the issuance of an injunction under Section 10(j).  Small v. Avanti Health Systems, LLC, 661 F.3d 1180, 1191 – 92 (9th Cir. 2011) ("Given the central importance of collective bargaining to the cause of industrial peace, when the Director establishes a likelihood of success on a failure to bargain in good faith claim, that failure to bargain will likely cause a myriad of irreparable harms."); Frankl, 650 F.3d at 1362 ("[F]ailure to bargain in good faith . . . has long been understood as likely causing an irreparable injury to union representation."). Failure to bargain in good faith threatens industrial peace, deprives employees of a wide range of economic and non-economics benefits brought about by labor unions, and also weakens support for a union in a way that cannot be remedied by subsequent relief. Small, 661 F.3d at 1192.  The Court therefore finds that the Regional Director has shown a likelihood of irreparable injury.

### C.     Balance of the Equities and Public Interest

As stated above, if a likelihood of irreparable harm and success on the merits is established, "the [Regional Director] will have established that preliminary relief is in the public interest," and there is considerable support for a finding that the equities weigh in favor of an injunction.  Frankl, 650 F.3d at 1365.  The countervailing interest articulated by Barstow justifying denial of injunctive relief is that granting the injunction will place its license and its employees' professional licenses at risk.  This contention is speculative, as Barstow has not submitted evidence tending to show that this harm would occur if the Court grants interim injunctive relief.  Accordingly, the Court finds that the latter two factors also weigh in favor of granting injunctive relief.

///
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 13-933 CAS (DTBx) | Date | July 29, 2013 |
|---|---|---|---|
| Title | MORI PAM RUBIN V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

## V.  CONCLUSION

In accordance with the foregoing, the Court GRANTS the Regional Director's petition for interim injunctive relief under Section 10(j).

IT IS SO ORDERED.

|  | 00 | : | 12 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |